IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SALES COMPANY, INC., on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS COMPANY III, LTD.; WARNER CHILCOTT CORPORATION; WARNER CHILCOTT (US) INC.; GALEN (CHEMICALS) LTD.; and BARR PHARMACEUTICALS, INC., <br><br> Defendants. | Civ. Action No. 1:05-CV-02335-CKK <br><br> Judge Colleen Kollar-Kotelly <br><br> JURY TRIAL DEMANDED |

BARR PHARMACEUTICALS' ANSWER TO
PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant BARR PHARMACEUTICALS, INC. ("Barr") hereby responds to the allegations of plaintiff AMERICAN SALES COMPANY, INC. ("Plaintiff") in its purported Class Action Complaint ("Complaint"), by denying it has engaged or is engaging in any unlawful or unfair methods of competition in or affecting commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Barr further responds to each paragraph of the Complaint as set forth below. Any allegation in the Complaint not specifically addressed below is hereby denied.

1.      Plaintiffs bring this action on behalf of all persons and entities that purchased Ovcon directly from Warner Chilcott from April 22, 2004 through the present and were harmed by the horizontal agreement not to compete between Warner Chilcott and Barr, two sellers of prescription drugs, with respect to the drug Ovcon 35 ("Ovcon"), an oral contraceptive used to prevent pregnancy. Barr is the only company approved by the United States Food and Drug Administration ("FDA") to sell a generic version of Ovcon in competition with Warner Chilcott's branded Ovcon.

**ANSWER:**   Paragraph 1 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of the allegation contained in the last sentence of Paragraph 1 of the Complaint.  Barr denies the remaining allegations contained in Paragraph 1 of the Complaint and specifically denies that this suit can be litigated as a class action under Rule 23(b)(3) or any other rule.

2.      Prior to the entry of the horizontal agreement not to compete, Barr planned to sell its lower-priced generic Ovcon once Barr received FDA approval.  Both Warner Chilcott and Barr predicted the entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's sales of the higher-priced branded Ovcon by 50 percent in the first year alone.  To forestall this competitive threat and to protect its Ovcon sales, Warner Chilcott entered into an agreement with Barr preventing entry of Barr's generic Ovcon into the United States for five years in exchange for a payment to Barr of $20 million.

**ANSWER:**   Barr denies the allegations contained in Paragraph 2 of the Complaint, except admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.

3.      Absent Defendants' anti-competitive conduct and agreement, Plaintiff and the other Class members would have paid less for Ovcon and/or would have purchased a lower-cost generic alternative to Warner Chilcott's higher-priced branded Ovcon during the Class Period. Prices for these products would have been lower with unfettered competition because absent the exclusionary conduct: (a) Warner Chilcott's prices to members of the Class for Ovcon would have been lower; and (b) members of the Class would have replaced some of their Ovcon purchases from Warner Chilcott with less expensive generic alternatives sold by Barr or other generic manufacturers.  As a result of Defendants' unlawful conduct, Plaintiffs and the other Class members paid overcharges on their purchases of Ovcon throughout the Class Period.

**ANSWER:**   Paragraph 3 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 3 of the Complaint.

4.      Plaintiffs bring this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, to recover treble damages, equitable relief, costs of suit and reasonable attorneys' fees for Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. §§ 1331 and 1337, because the action arises under the laws of the United States.

**ANSWER:**    Paragraph 4 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 4 of the Complaint, and specifically denies that plaintiff is entitled to any relief whatsoever.

5.    Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) and (c) because during the Class Period, Defendants resided, transacted business, were found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

**ANSWER:**    Paragraph 5 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 5 of the Complaint.

6.    The Court has personal jurisdiction over Defendants pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22.

**ANSWER:**    Paragraph 6 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr denies each and every allegation contained in Paragraph 6 of the Complaint.

7.    Plaintiff American Sales Company, Inc. is a corporation organized under the law of the State of Delaware and is located in Erie County, New York.  American Sales provides purchasing and distribution services in health and beauty care items, pharmacy and general merchandise to the U.S. retail arenas.  During the Class Period, American Sales purchased Ovcon directly from Warner Chilcott and was injured thereby.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 7 of the Complaint, but denies plaintiff suffered any injury whatsoever.

8.      Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.  Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products in the United States, including Ovcon.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 8 of the Complaint.

9.      Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc.  Warner Chilcott Corporation is organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 9 of the Complaint.

10.     Defendant Warner Chilcott (U.S.) Inc., is a wholly-owned subsidiary of Warner Chilcott Corporation.  Warner Chilcott (U.S.) Inc., is organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER:**    Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 10 of the Complaint.

11.     Warner Chilcott acquired Ovcon, which was originally approved by the FDA in 1976, and is not subject to patent protection, from Bristol-Myers Squibb Company on January 26, 2000.  As part of the acquisition, Bristol-Myers Squibb Company agreed to supply (and has supplied) Ovcon to Warner Chilcott.  Ovcon's net dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price.  Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products, and has been sold by Warner Chilcott at a price substantially above Warner Chilcott's cost of acquiring the product.  For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

**ANSWER:**    Barr admits that it is unaware of any claims of patent protection on Ovcon.

Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 11 of the Complaint.

12.    Galen (Chemicals) Ltd., is organized, existing, and doing business under and by virtue of the laws of the Republic of Ireland. Galen Chemicals' office and principal place of business is located at Unit 4, Burton Hall Pk., Sandyford Industrial Estate, Foxrock, Ireland. Galen Chemicals is directly or indirectly owned or controlled by Warner Chilcott Holdings Company III, Ltd. Galen Chemicals entered into the anticompetitive agreement that prevents Barr's generic Ovcon entry challenged herein.

**ANSWER:**    Barr admits that it executed an Option and License Agreement with Galen (Chemicals) Ltd. Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 of the Complaint.

13.    Defendant Barr is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware. Barr's office and principal place of business is located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519. Barr is engaged in the business of, among other things, developing, manufacturing, marketing and distributing generic oral contraceptive products.

**ANSWER:**    Barr admits that it is a corporation organized under the laws of the State of Delaware. Barr further admits that it is a pharmaceutical company whose regular business activities include the development, manufacture, and marketing of various pharmaceutical products. Barr denies the remaining allegations contained in Paragraph 13 of the Complaint.

14.    The Federal Food, Drug and Cosmetic Act ("FDCA") regulates the manufacture and distribution of drugs and medical devised in the United States, 21 U.S.C. § 301 *et seq.* Under the FDCA, premarket approval by the Food and Drug Administration ("FDA") is required before a company may begin selling a new drug, often referred to as a "pioneer" or "branded" drug, in interstate commerce in the United States. 21 U.S.C. § 355(a). Premarket approval for a new drug must be sought by filing a new drug application ("NDA") with the FDA under § 355(b) of the FDCA, demonstrating that the drug is safe and effective for its intended use.

**ANSWER:**    Paragraph 14 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr admits that, among other things, a drug manufacturer must obtain approval from the FDA before a manufacturer may lawfully introduce a new drug in the United States. Barr further admits that, among other things, a drug manufacturer must file a New Drug Application with the FDA and demonstrate that a new drug

is safe and effective for its intended use. Barr lacks knowledge or information sufficient to form

a belief as to the truth of the remaining allegations contained in Paragraph 14 of the Complaint.

15.     Once the FDA approves the safety and effectiveness of a new prescription drug, it may be used in the United States only under the direction and care of a doctor who writes a prescription specifying the drug, which must be purchased from a licensed pharmacist. The pharmacist will then dispense the drug specified by the physician unless a generic version is available that has been approved by the FDA for substitution as the bioequivalent of the prescription drug.

**ANSWER:**     Paragraph 15 of the Complaint contains legal conclusions to which no

response is required. To the extent a response is required, Barr admits that in some states and

under certain circumstances a pharmacist may dispense a generic drug when presented with a

prescription for its branded equivalent, but lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in Paragraph 15 of the Complaint.

16.     Generic drugs are drugs that the FDA has found to be "bioequivalent" to their corresponding brand name drugs. A generic drug is bioequivalent if it proves the identical therapeutic benefits and has the same active chemical composition as its brand name counterpart. When a generic drug is completely equivalent to a brand name drug, the FDA assigns the generic drug an "AB" rating.

**ANSWER:**     Paragraph 16 of the Complaint contains legal conclusions to which no

response is required. To the extent a response is required, Barr lacks knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 16

of the Complaint.

17.     Generic drugs are invariably priced substantially below the branded drugs to which they are bioequivalent. Typically, the first generic drug is sold at a modest discount compared to the brand name drug, with discounts increasing as more companies begin selling the generic. As additional generic competitors come to market, the price of the generic equivalents continues to decrease. In some cases, generic competitors sell products equivalent to brand name prescription drugs for a little as 15 percent of the price of the brand name drug, and capture as much as 90 percent of the market for that drug. Unless the branded manufacturer lowers prices to meet competition, a branded drug loses a significant portion of its market share to generic competitors less than a year after the introduction of generic competition.

**ANSWER:**    Paragraph 17 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that generic drugs can cost less than bioequivalent branded drugs but that each drug must be considered individually to observe pricing behavior.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17 of the Complaint.

18.    Moreover, if a lower-priced generic version of a brand name drug exists, and the physician has not specifically indicated on the prescription "dispense as written" (or a similar instruction), typically, the pharmacist will substitute, or at least offer to substitute, the generic drug.

**ANSWER:**    Paragraph 18 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that in some states and under certain circumstances a pharmacist may dispense generic drugs when presented with a prescription for its branded equivalent, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 18 of the Complaint.

19.    Once a physician writes a prescription for a brand name drug such as Ovcon, that prescription defines and limits the market to the brand name drug or its AB-rated generic equivalent.  A pharmacist may substitute only drugs that carry the FDA's AB generic rating for a physician's prescription for a brand name drug.

**ANSWER:**    Paragraph 19 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that in some states and under certain circumstances a pharmacist may dispense generic drugs when presented with a prescription for its branded equivalent.  Barr denies the remaining allegations contained in Paragraph 19 of the Complaint.

20.    The Hatch-Waxman Amendments provide that companies may seek approval to produce and market a generic form of a previously approved or "pioneer" drug by filing an Abbreviated New Drug Application ("ANDA") that relies on the safety and effectiveness findings reported in the NDA for the previously approved drug.

**ANSWER:**   Paragraph 20 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr admits that the Hatch-Waxman Act establishes certain procedures relating to generic pharmaceuticals.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20 of the Complaint.

21.     In September 2001, Barr filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon.  By January 2003, Barr publicly announced its intention to market generic Ovcon by the end of the year.

**ANSWER:**   Barr admits that it filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon, and admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available.  Barr denies the remaining allegations contained in Paragraph 21 of the Complaint.

22.     Barr planned to price generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon, and projected that its generic Ovcon would capture approximately 50 percent of Warner Chilcott's branded Ovcon sales within the first year of introduction.

**ANSWER:**   Barr admits that it made projections regarding the sales of a generic Ovcon product, but denies the remaining allegations contained in Paragraph 22 of the Complaint.

23.     Similarly, Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30 percent less than the price Warner Chilcott charges for branded Ovcon. Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescription sales within the first year of introduction.  Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period.

**ANSWER:**   Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 23 of the Complaint.

24.     Within five months of Barr's announcement, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER:**     Barr lacks knowledge or information sufficient to form a belief as to the

truth of each and every allegation contained in Paragraph 24 of the Complaint.

25.     In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product.

**ANSWER:**     Barr denies each and every allegation contained in Paragraph 25 of the

Complaint, except admits that in August 2003 representatives of Barr and Warner Chilcott

discussed a number of possible business transactions.

26.     Those discussions resulted in the execution of a letter of intent on September 10, 2003.  According to the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon product when Barr received final FDA approval.  Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

**ANSWER:**     Barr denies each and every allegation contained in Paragraph 26 of the

Complaint, except admits that on September 10, 2003, Barr and Warner Chilcott executed a

letter of intent to enter into an agreement that would give Warner Chilcott an option to enter into

a five-year exclusive license to Barr's Ovcon ANDA and a related supply agreement.

27.     In February 2004, FTC staff notified Warner Chilcott and Barr that it intended to investigate the non-compete agreement outlined in the Defendant's letter of intent because of its potential to significantly reduce competition by eliminating the only generic alternative to Ovcon.

**ANSWER:**     Barr denies each and every allegation contained in Paragraph 27 of the

Complaint, except admits that in February 2004, FTC staff advised Barr that it intended to

investigate the Ovcon transactions outlined in the letter of intent between Warner Chilcott and

Barr.

28.     On March 24, 2004, the Defendants signed their Final Agreement implementing the letter of intent.  Warner Chilcott paid Barr $1 million upon signing the Final Agreement. Under the Final Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a

licensee, for five years. The Final Agreement referred to this arrangement as Warner Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

**ANSWER:**    Barr admits that on March 24, 2004, Barr and Warner Chilcott executed an option agreement implementing the terms of the parties' letter of intent, and that Barr was paid $1 million in consideration for the option by Warner Chilcott. Barr further admits that Warner Chilcott exercised its option to a five-year exclusive license to Barr's Ovcon ANDA in May 2004. Barr denies the remaining allegations contained in Paragraph 28 of the Complaint.

29.    In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon supply from Barr, pursuant to specified payment terms. The ability to purchase supply from Barr would arise, however, only after Barr received final FDA approval for its generic Ovcon. Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and entered the market with its generic Ovcon product, Warner Chilcott's Ovcon supply needs would immediately be drastically reduced.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 29 of the Complaint, except admits that Barr and Warner Chilcott entered into a supply agreement with specified payment terms, and further admits that Barr could not supply Warner Chilcott with generic Ovcon under its ANDA prior to receiving FDA approval.

30.    On April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon. On April 23, 2004, Barr publicly announced its intention to market generic Ovcon if Warner Chilcott chose not to exercise its exclusive license option. However, on May 6, 2004, Warner Chilcott exercised the exclusive license option under the Final Agreement by paying Barr $19 million.

**ANSWER:**    Barr admits that on April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon, and admits that in April 2004 it publicly contemplated launching a generic version of Ovcon if Warner Chilcott chose not to exercise its option, subject to certain risks and uncertainties in making a generic Ovcon commercially available. Barr admits that on or about May 6, 2004, Warner Chilcott exercised the option for an exclusive license and supply, and further admits that Warner Chilcott paid Barr $19 million under the final agreement. Barr denies the remaining allegations contained in Paragraph 30 of the Complaint.

31.    Warner Chilcott did not begin purchasing Ovcon supply from Barr at that time, but instead continued to purchase Ovcon supply solely from Bristol-Myers Squibb Co., until about May 2005.  Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.  Absent its agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

**ANSWER:**    Barr admits Warner Chilcott began purchasing Ovcon from Barr in May 2005 and that until approximately May 2009 Barr is obligated to supply Warner Chilcott exclusively with product produced under Barr's ANDA on generic Ovcon.    Barr lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first sentence of Paragraph 31 of the Complaint.  Barr denies the remaining allegations contained in Paragraph 31 of the Complaint.

32.    Entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon, and lead to a significant reduction in the average price purchasers paid for Ovcon products.  Barr has abided by its agreement not to sell generic Ovcon in the United States.  As of the date of this complaint, Barr remains the only company that has received approval from the FDA to make an AB-rated generic version of Ovcon.

**ANSWER:**    Barr admits that it has not sold generic Ovcon in the United States.  Barr lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of Paragraph 32 of the Complaint.  Barr denies the remaining allegations contained in Paragraph 32 of the Complaint.

33.    The relevant product market is the market for the sale of Ovcon and its AB rated generic equivalents.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 33 of the Complaint.

34.    The relevant geographic market is the United States as a whole.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 34 of the Complaint.

35.    At all relevant times, Warner Chilcott's market share in the relevant product and geographic markets was 100%.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 35 of the Complaint.

36.    *Numerosity*: Joinder of all Class members is impracticable.  While the size of the Class is not yet known with certainty, based on the nature of the trade and commerce involved, Plaintiff reasonably believes that the Class numbers potentially in the hundreds, if not thousands. Class members are geographically dispersed throughout the United States.  The Class members are readily identifiable from information and records in Warner Chilcott's exclusive possession.

**ANSWER:**    Paragraph 36 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 36 of the Complaint but specifically denies that this suit can be maintained as a class action.

37.    *Commonality*: Questions of law and fact are common to the Class, including, but not limited to:

a.    whether the agreement not to compete among Defendants is a *per se* violation of the Sherman Act;

b.    whether Defendants engaged in agreements, contracts, combinations, and conspiracies, which had the purpose and/or effect of unreasonably restraining competition and limiting purchaser access to generic Ovcon;

c.    whether Defendants' unreasonably anti-competitive contracts, combinations, and conspiracies have caused Plaintiff and the other members of the Class to suffer antitrust injury in the nature of overcharges;

d.    whether Defendants' unlawful conduct caused Plaintiff and other Class members to pay more for Ovcon than they otherwise would have paid;

e.    the appropriate Class-wide measure of damages; and

f.    whether Defendants' anti-competitive conduct is continuing, thus entitling the Class to injunctive relief to promote unrestrained trade and free and fair competition.

**ANSWER:**    Paragraph 37 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Barr lacks knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 37 of the Complaint, but specifically denies that plaintiff is entitled to any relief whatsoever.

38.    *Typicality*: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and other Class members are direct purchasers of Ovcon and were overcharged and thus injured by the same wrongful conduct of Defendants. Defendants' violation of the antitrust laws, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiff and the other Class members.

**ANSWER:**    Paragraph 38 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 38 of the Complaint.

39.    *Adequacy*: As representative of the Class, Plaintiff will fairly and adequately protect the interests of all Class members.

**ANSWER:**    Paragraph 39 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 39 of the Complaint.

40.    *Predominance*: The questions of law and fact that are common to the members of the Class predominate over any questions affecting only individual Class members. Whatever possible difficulties may exist in the management of the class action are greatly outweighed by the advantages of the class action procedure. Those advantages include, but are not limited to, providing Class members with a method for redress of claims that might otherwise not warrant individual litigation.

**ANSWER:**    Paragraph 40 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 40 of the Complaint.

41.    *Superiority*: Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. A class action enables injured persons or entities to obtain redress on claims that might not be practicable to pursue individually. Class treatment also eliminates the potential for inconsistent adjudications.

**ANSWER:** Paragraph 41 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 41 of the Complaint, but specifically denies that this suit can be maintained as a class action.

42.    Plaintiff incorporates by reference all of the foregoing allegations as though fully set forth herein.

**ANSWER:** Barr incorporates by reference each and all of the foregoing matters set forth in its Answers as though fully set forth herein.

43.    Section 1 of the Sherman Act prohibits every unreasonable contract, combination or conspiracy in restraint of trade. 15 U.S.C. § 1.

**ANSWER:** Paragraph 43 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Barr lacks knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 43 of the Complaint.

44.    Prior to, and during, the Class Period, Defendants agreed, conspired and colluded to allocate the market for Ovcon by eliminating generic competition for at least five years. Such conduct constitutes an illegal agreement, combination and conspiracy in restraint of trade in violation of Section 1 of the Sherman Act. 15 U.S.C. § 1.

**ANSWER:** Barr denies each and every allegation contained in Paragraph 44 of the Complaint.

45.    As alleged above, there was no legitimate business justification for the agreement, collusion and conspiracy between Defendants that: (a) substantially foreclosed and excluded competition from generic competition for Ovcon; and (b) resulted in Warner Chilcott's willful maintenance and unlawful exercise of monopoly power in the relevant markets.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 45 of the Complaint.

46.    Defendants' collusion, agreement and conspiracy alleged herein has enabled and assisted Warner Chilcott in: (a) effectively excluding less expensive, competitive products from the relevant market; (b) maintaining Warner Chilcott's 100% market share and monopoly power in the relevant market; and (d) otherwise reaping the benefits of its illegal monopoly power. The anti-competitive effects of Defendants' collusive and conspiratorial conduct far outweighs any conceivable procompetitive benefits or justifications.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 44 of the Complaint.

47.    Plaintiff and members of the Class were injured in their business or property by the agreement, collusion and conspiracy alleged above which facilitated, enabled, assisted or furthered Warner Chilcott's substantial foreclosure and exclusion of competition and monopolization of the relevant market. Without limiting the generality of the foregoing, Plaintiff and other members of the Class have been forced to pay higher prices for Ovcon than they would have paid in the absence of Defendants' unlawful conduct.

**ANSWER:**    Barr denies each and every allegation contained in Paragraph 44 of the Complaint.

## DEFENSES

In addition to the foregoing responses, Barr asserts the following defenses to the claims alleged in the Plaintiff's Class Action Complaint. Barr does not assume the burden of proof on these defenses where the applicable substantive law provides otherwise.

### First Affirmative Defense

1.    Plaintiff's Complaint fails to state a claim against Barr upon which relief can be granted.

### Second Affirmative Defense

2.    Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### Third Affirmative Defense

3.    Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourth Affirmative Defense

4.    Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### Fifth Affirmative Defense

5.    Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Barr has been reasonable, based upon independent, legitimate business and economic justifications, and was taken without the purpose or effect of injuring competition.

### Sixth Affirmative Defense

6.    Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Barr was reasonable in relation to the development and preservation of its business.

### Seventh Affirmative Defense

7.    Plaintiff's claims are barred, in whole or in part, because none of Barr's actions have injured competition in any relevant market.

### Eighth Affirmative Defense

8.    Plaintiff's claims are barred, in whole or in part, because Barr's actions have pro-competitive effects that benefit competition as a whole in any relevant market.

### Ninth Affirmative Defense

9.    Plaintiff's claims are barred, in whole or in part, because none of Barr's actions have harmed competition and/or consumers.

### Tenth Affirmative Defense

10.    Plaintiff's claims are barred, in whole or in part, because Barr had no knowledge, intention, notice or belief that Barr's actions might illegally restrain trade.  Further, Barr could not have known that its actions might illegally restrain trade.

### Eleventh Affirmative Defense

11.    Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any willful or flagrant act.

### Twelfth Affirmative Defense

12.    Plaintiff's claims are barred, in whole or in part, because Barr relied in good faith on the actions and statements of the Federal Trade Commission.

### Thirteenth Affirmative Defense

13.    Plaintiff's claims are barred, in whole or in part, because Barr did not conceal any of its actions.

### Fourteenth Affirmative Defense

14.    Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any pattern or practice of illegal activity.

### Fifteenth Affirmative Defense

15.    Plaintiff's claims are barred, in whole or in part, because Barr's actions were the result of a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error.

### Sixteenth Affirmative Defense

16.    Plaintiff's claims are barred, in whole or in part, because Barr's actions did not cause harm to the plaintiff.

### Seventeenth Affirmative Defense

17.    Plaintiff's claims are barred, in whole or in part, because Barr did not engage in any unfair or deceptive act or practice.

### Eighteenth Affirmative Defense

18.    Plaintiff's claims are barred, in whole or in part, because Plaintiff has not properly alleged either a relevant product market or a relevant geographic market.

### Nineteenth Affirmative Defense

19.    Plaintiff's claims are barred, in whole or in part, because Barr has no market power and plaintiff has failed to allege any market power.

### Twentieth Affirmative Defense

20.    Plaintiff's claims are barred, in whole or in part, because plaintiff does not have standing.

### Twenty-First Affirmative Defense

21.    Plaintiff's claims are barred, in whole or in part, because plaintiff has not suffered antitrust injury.

### Twenty-Second Affirmative Defense

22.    Plaintiff's claims are barred, in whole or in part, because the action against Barr is not properly maintained as a class action.

### Twenty-Third Affirmative Defense

23.    To the extent that plaintiff has failed to mitigate, minimize, or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

### Twenty-Fourth Affirmative Defense

24.    Plaintiff's claims are barred, in whole or in part, because Barr has acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with respect to plaintiff.

### Twenty-Fifth Affirmative Defense

25.     Barr reserves the right to assert and rely on other applicable defenses as may become available or apparent, to amend its answer and/or defenses, and/or delete defenses that it determines to be inapplicable.

### JURY DEMAND

Barr hereby demands trial by jury on all claims so triable.

### PRAYER FOR RELIEF

Wherefore, Barr prays as follows:

1.     That the Court enter judgment for Barr;

2.     That the Court award Barr reasonable costs and expenses including but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.

Date:   February 21, 2006                    Respectfully submitted,

_Karen N. Walker (D.C. Bar # 412137)_
Mark L. Kovner (D.C. Bar # 430431)
Chong S. Park (D.C. Bar # 463050)

KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C.  20005
Tel. (202) 879-5000
Fax (202) 879-5200

***Attorneys for Defendant Barr
Pharmaceuticals, Inc.***

## CERTIFICATE OF SERVICE

This is to certify that on February 21, 2006, the undersigned attorney caused a true and correct copy of the foregoing DEFENDANT BARR PHARMACEUTICALS' ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT in Civil Action No. 1:05-CV-02335-CKK to be served on the following counsel of record by First Class Mail.

_Karen N. Walker_
Karen N. Walker

Jonathan W. Cuneo
David W. Stanley
William H. Anderson
CUNEO GILBERT & LaDUCA, LLP
507 C Street, N.W.
Washington, D.C.  20002

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101

Thomas M. Sobol
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, 4th Floor
Cambridge, MA  02142

Elizabeth A. Fegan
Timothy A. Scott
HAGENS BERMAN SOBOL SHAPIRO LLP
60 West Randolph Street, Suite 200
Chicago, IL  60601