# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

```
-----------------------------------------------------------------x
AMERICAN SALES COMPANY, INC., on          :
behalf of itself and all others similarly situated,   :
                                          :
              Plaintiff,                  :     Civ. Action No. 1:05-CV-02335-CKK
                                          :
       v.                                 :     Judge Colleen Kollar-Kotelly
                                          :
WARNER CHILCOTT HOLDINGS                   :     JURY TRIAL DEMANDED
COMPANY III, LTD.; WARNER CHILCOTT        :
CORPORATION; WARNER CHILCOTT (US)         :
INC.; GALEN (CHEMICALS) LTD.; and         :
BARR PHARMACEUTICALS, INC.,               :
                                          :
              Defendants.                 :
                                          :
-----------------------------------------------------------------x
```

## DEFENDANT WARNER CHILCOTT'S
## ANSWER TO CLASS ACTION COMPLAINT

Defendants Warner Chilcott Holdings Company III, Ltd., Warner Chilcott

Corporation, Warner Chilcott (US) Inc., and Galen (Chemicals), Ltd. (collectively, "Warner

Chilcott") answer the allegations of American Sales Company, Inc. ("Plaintiff") in its Class

Action Complaint ("Complaint") as follows:

## PLAINTIFF'S ALLEGATION

1.      Plaintiffs bring this action on behalf of all persons and entities that purchased Ovcon directly from Warner Chilcott from April 22, 2004 through the present and were harmed by the horizontal agreement not to compete between Warner Chilcott and Barr, two sellers of prescription drugs, with respect to the drug Ovcon 35 ("Ovcon"), an oral contraceptive used to prevent pregnancy. Barr is the only company approved by the United States Food and Drug Administration ("FDA") to sell a generic version of Ovcon in competition with Warner Chilcott's branded Ovcon.

**ANSWER**

The first sentence of Paragraph 1 of the Complaint is a description of Plaintiff's claims to which no response is required. To the extent a response is required, Warner Chilcott denies the allegations contained in the first sentence of Paragraph 1 of the Complaint, except admits that Warner Chilcott and Barr sell prescription drugs and further admits that Ovcon 35 ("Ovcon") is an oral contraceptive. Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the second sentence of Paragraph 1 of the Complaint.

**PLAINTIFF'S ALLEGATION**

2. Prior to entry of the horizonal agreement not to compete, Barr planned to sell its lower-priced generic Ovcon once Barr received FDA approval. Both Warner Chilcott and Barr predicted that entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's sales of the higher-priced branded Ovcon by 50 percent in the first year alone. To forestall this competitive threat and to protect its Ovcon sales, Warner Chilcott entered into an agreement with Barr preventing entry of Barr's generic Ovcon into the United States for five years in exchange for a payment to Barr of $20 million.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 2 of the Complaint.

**PLAINTIFF'S ALLEGATION**

3. Absent Defendants' anti-competitive conduct and agreement, Plaintiff and the other Class members would have paid less for Ovcon and/or would have purchased a lower-cost generic alternative to Warner Chilcott's higher-priced branded Ovcon during the Class Period. Prices for these products would have been lower with unfettered competition because absent the exclusionary conduct: (a) Warner Chilcott's prices to members of the Class for Ovcon would have been lower; and (b) members of the Class would have replaced some of their Ovcon purchases from Warner Chilcott with less expensive generic alternatives sold by Barr or other

generic manufacturers.  As a result of Defendants' unlawful conduct, Plaintiffs and the other Class members paid overcharges on their purchases of Ovcon throughout the Class Period.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 3 of the Complaint.  Warner Chilcott further denies that it has engaged in any unlawful or anticompetitive conduct whatsoever, and denies that Plaintiff is entitled to any relief whatsoever.

**PLAINTIFF'S ALLEGATION**

4.    Plaintiffs bring this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, to recover treble damages, equitable relief, costs of suit and reasonable attorneys' fees for Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. §§ 1. Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C §§ 1331 and 1337, because the action arises under the laws of the United States.

**ANSWER**

The first sentence of Paragraph 4 of the Complaint is a description of Plaintiff's claims to which no response is required.  To the extent a response is required, Warner Chilcott denies that it has engaged in any activity in violation of Section 1 of the Sherman Act, and further denies that Plaintiff is entitled to any relief whatsoever.  The second sentence of Paragraph 4 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the second sentence of Paragraph 4 of the Complaint.

**PLAINTIFF'S ALLEGATION**

3

5.      Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b) and (c) because during the Class Period, Defendants resided, transacted business, were found, or had agents in this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

**ANSWER**

Paragraph 5 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint, except admits that Ovcon is sold in the District of Columbia.

**PLAINTIFF'S ALLEGATION**

6.      The Court has personal jurisdiction over Defendants pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22.

**ANSWER**

Paragraph 6 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 6 of the Complaint.

**PLAINTIFF'S ALLEGATION**

7.      Plaintiff American Sales Company, Inc. is a corporation organized under the law of the State of Delaware and is located in Erie County, New York.  American Sales provides purchasing and distribution services in health and beauty care items, pharmacy and general merchandise to the U.S. retail arenas.  During the Class Period, American Sales purchased Ovcon directly from Warner Chilcott and was injured thereby.

**ANSWER**

   Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in the first and second sentences of Paragraph 7

of the Complaint.  The third sentence of Paragraph 7 of the Complaint contains legal conclusions

to which no response is required.  To the extent a response is required, Warner Chilcott denies

the allegations contained in the third sentence of Paragraph 7 of the Complaint, except admits

that Plaintiff purchased Ovcon from Warner Chilcott.


**PLAINTIFF'S ALLEGATION**

  8.  Defendant Warner Chilcott Holdings Company III, Ltd. is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.  Warner Chilcott Holdings Company III, Ltd., through its direct and indirect subsidiaries, is engaged in the discovery, development, manufacturing, and distribution of pharmaceutical products in the United States, including Ovcon.

**ANSWER**

   Warner Chilcott denies the allegations contained in Paragraph 11 of the

Complaint, except admits that Warner Chilcott Holdings Company III, Ltd. is a privately-owned,

for-profit enterprise organized, existing, and doing business under and by virtue of the laws of

Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM12

Bermuda.  Warner Chilcott further admits that Warner Chilcott Holdings Company III, Ltd.'s

subsidiaries are engaged in the discovery, development, manufacturing, and distribution of

pharmaceutical products in the United States.

5

**PLAINTIFF'S ALLEGATION**

9.    Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company III, Ltd. and is the direct 100% shareholder of Warner Chilcott (U.S.) Inc. Warner Chilcott Corporation is organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 9 of the Complaint.

**PLAINTIFF'S ALLEGATION**

10.    Defendant Warner Chilcott (U.S.) Inc., is a wholly-owned subsidiary of Warner Chilcott Corporation.  Warner Chilcott (U.S.) Inc., is organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 10 of the Complaint.

**PLAINTIFF'S ALLEGATION**

11.    Warner Chilcott acquired Ovcon, which was originally approved by the FDA in 1976, and is not subject to patent protection, from Bristol-Myers Squibb Company on January 26, 2000.  As part of the acquisition, Bristol-Myers Squibb Company agreed to supply (and has supplied) Ovcon to Warner Chilcott.  Ovcon's net dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon's price.  Ovcon is, and has been, one of Warner Chilcott's highest revenue-producing products, and has been sold by Warner Chilcott at a price substantially above Warner Chilcott's cost of acquiring the product.  For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon were approximately $71.5 million.

## ANSWER

Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 11 of the Complaint.  Warner Chilcott admits the allegations contained in the second

sentence of Paragraph 11 of the Complaint, except denies that Bristol-Myers Squibb Company

("BMS") has ever adequately supplied Ovcon to Warner Chilcott, and further denies that BMS

has continued to supply Ovcon to Warner Chilcott.  Warner Chilcott denies the allegations

contained in the third sentence of Paragraph 11 of the Complaint, except admits that Ovcon's net

sales have more than doubled since 2000, and further admits that Ovcon's price has risen.

Warner Chilcott denies the allegations contained in the fourth sentence of Paragraph 11 of the

Complaint, except admits that Ovcon has been one of Warner Chilcott's highest revenue-

producing products and further admits that Warner Chilcott sells Ovcon at a price above its cost.

Warner Chilcott admits the allegations contained in the fifth sentence of Paragraph 11 of the

Complaint.


## PLAINTIFF'S ALLEGATION

12.    Galen (Chemicals) Ltd., is organized, existing, and doing business under and by
virtue of the laws of the Republic of Ireland.  Galen Chemicals' office and principal place of
business is located at Unit 4, Burton Hall Pk., Sandyford Industrial Estate, Foxrock, Ireland.
Galen Chemicals is directly or indirectly owned or controlled by Warner Chilcott Holdings
Company III, Ltd. Galen Chemicals entered into the anticompetitive agreement that prevents
Barr's generic Ovcon entry challenged herein.

## ANSWER

Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 12 of the Complaint.  Warner Chilcott admits the allegations contained in the second

sentence of Paragraph 12 of the Complaint.  Warner Chilcott denies the remaining allegations

contained in Paragraph 12 of the Complaint, except admits that Galen (Chemicals) Limited is

directly or indirectly owned by Warner Chilcott Holdings Company III, Ltd., and further admits

that Galen (Chemicals) Limited executed an option agreement with Barr on March 24, 2004.

Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

## PLAINTIFF'S ALLEGATION

13.    Defendant Barr is a corporation organized, existing, and doing business under and
by virtue of the laws of the State of Delaware.  Barr's office and principal place of business is
located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519.  Barr is engaged in
the business of, among other things, developing, manufacturing, marketing, and distributing
generic oral contraceptive products.

## ANSWER

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 13 of the Complaint, except admits that Barr is

engaged in the business of, among other things, developing, manufacturing, marketing, and

distributing generic oral contraceptive products.

## PLAINTIFF'S ALLEGATION

14.    The Federal Food, Drug and Cosmetic Act ("FDCA") regulates the manufacture
and distribution of drugs and medical devices in the United States, 21 U.S.C. § 301 *et seq.*
Under the FDCA, premarket approval by the Food and Drug Administration ("FDA") is required
before a company may begin selling a new drug, often referred to as a "pioneer" or "branded"
drug, in interstate commerce in the United States. 21 U.S.C. § 355(a).  Premarket approval for a
new drug must be sought by filing a new drug application ("NDA") with the FDA under §
355(b) of the FDCA, demonstrating that the drug is safe and effective for its intended use.

## ANSWER

Paragraph 14 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott admits that the Federal Food,

Drug, and Cosmetics Act, 21 U.S.C. § 301 *et seq.*, has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFF'S ALLEGATION**

15.     Once the FDA approves the safety and effectiveness of a new prescription drug, it may be used in the United States only under the direction and care of a doctor who writes a prescription specifying the drug, which must be purchased from a licensed pharmacist. The pharmacist will then dispense the drug specified by the physician unless a generic version is available that has been approved by the FDA for substitution as the bioequivalent of the prescription drug.

**ANSWER**

The first sentence of Paragraph 15 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence Paragraph 15 of the Complaint. Warner Chilcott denies each and every allegation contained in the second sentence of Paragraph 15 of the Complaint

**PLAINTIFF'S ALLEGATION**

16.     Generic drugs are drugs that the FDA has found to be "bioequivalent" to their corresponding brand name drugs. A generic drug is bioequivalent if it proves the identical therapeutic benefits and has the same active chemical composition as its brand name counterpart. When a generic drug is completely equivalent to a brand name drug, the FDA assigns the generic drug an "AB" rating.

**ANSWER**

Paragraph 16 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information

9

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 16 of the Complaint.

**PLAINTIFF'S ALLEGATION**

17.     Generic drugs are invariably priced substantially below the branded drugs to which they are bioequivalent.  Typically, the first generic drug is sold at a modest discount compared to the brand name drug, with discounts increasing as more companies begin selling the generic.  As additional generic competitors come to market, the price of the generic equivalents continues to decrease.  In some cases, generic competitors sell products equivalent to brand name prescription drugs for as little as 15 percent of the price of the brand name drug, and capture as much as 90 percent of the market for that drug.  Unless the branded manufacturer lowers prices to meet competition, a branded drug loses a significant portion of its market share to generic competitors less than a year after the introduction of generic competition.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 17 of the Complaint.

**PLAINTIFF'S ALLEGATION**

18.     Moreover, if a lower-priced generic version of a brand name drug exists, and the physician has not specifically indicated on the prescription "dispense as written" (or a similar instruction), typically, the pharmacist will substitute, or at least offer to substitute, the generic drug.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 18 of the Complaint.

**PLAINTIFF'S ALLEGATION**

19.     Once a physician writes a prescription for a brand name drug such as Ovcon, that prescription defines and limits the market to the brand name drug or its AB-rated generic

10

equivalent.  A pharmacist may substitute only drugs that carry the FDA's AB generic rating for a physician's prescription for a brand name drug.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 19 of the Complaint.

**PLAINTIFF'S ALLEGATION**

20.     The Hatch-Waxman Amendments provide that companies may seek approval to produce and market a generic form of a previously approved or "pioneer" drug by filing an Abbreviated New Drug Application ("ANDA") that relies on the safety and effectiveness findings reported in the NDA for the previously approved drug.

**ANSWER**

Paragraph 20 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint, except admits that the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), Pub. L. No. 98-417, 98 Stat. 1585 (1984) has procedures concerning generic pharmaceuticals.

**PLAINTIFF'S ALLEGATION**

21.     In September 2001, Barr filed an ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon.  By January 2003, Barr publicly announced its intention to market generic Ovcon by the end of the year.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 21 of the Complaint.

11

**PLAINTIFF'S ALLEGATION**

22.    Barr planned to price generic Ovcon at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon, and projected that its generic Ovcon would capture approximately 50 percent of Warner Chilcott's branded Ovcon sales within the first year of introduction.

**ANSWER**

       Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 22 of the Complaint.


**PLAINTIFF'S ALLEGATION**

23.    Similarly, Warner Chilcott expected that Barr would price its generic Ovcon at approximately 30 percent less than the price Warner Chilcott charges for branded Ovcon. Warner Chilcott projected that generic Ovcon would capture at least 50 percent of Ovcon's new prescription sales within the first year of introduction.  Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon would decline by at least $100 million over a three year period.

**ANSWER**

       Warner Chilcott denies each and every allegation contained in Paragraph 23 of the

Complaint.


**PLAINTIFF'S ALLEGATION**

24.    Within five months of Barr's announcement, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon entry was the "biggest risk to the company."

**ANSWER**

       Warner Chilcott denies each and every allegation contained in Paragraph 24 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

25.    In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon product.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 25 of the Complaint.

**PLAINTIFF'S ALLEGATION**

26.    Those discussions resulted in the execution of a letter of intent on September 10, 2003.  According to the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon product when Barr received final FDA approval.  Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon to Warner Chilcott if Warner Chilcott so requested.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 26 of the Complaint, except admits that on September 10, 2003 Warner Chilcott and Barr executed a letter of intent.  Warner Chilcott respectfully refers the Court to the letter of intent for the terms thereof.

**PLAINTIFF'S ALLEGATION**

27.    In February 2004, FTC staff notified Warner Chilcott and Barr that it intended to investigate the non-compete agreement outlined in the Defendant's letter of intent because of its potential to significantly reduce competition by eliminating the only generic alternative to Ovcon.

13

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 27 of the

Complaint, except admits that in February 2004 the FTC Healthcare Division advised Warner

Chilcott that it intended to investigate the Ovcon transactions outlined in the letter of intent.


**PLAINTIFF'S ALLEGATION**

        28.     On March 24, 2004, the Defendants signed their Final Agreement implementing the letter of intent. Warner Chilcott paid Barr $1 million upon signing the Final Agreement. Under the Final Agreement, within 45 days after the FDA approved Barr's generic Ovcon ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon in the United States, either by itself or through a licensee, for five years. The Final Agreement referred to this arrangement as Warner Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon.

**ANSWER**

        Warner Chilcott denies the allegations contained in Paragraph 28 of the

Complaint, except admits that Warner Chilcott and Barr entered into an option agreement on

March 24, 2004, and further admits that Warner Chilcott paid Barr $1 million in consideration

for the option. Warner Chilcott respectfully refers the Court to the option agreement for the

terms thereof.


**PLAINTIFF'S ALLEGATION**

        29.     In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon supply from Barr, pursuant to specified payment terms. The ability to purchase supply from Barr would arise, however, only after Barr received final FDA approval for its generic Ovcon. Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and entered the market with its generic Ovcon product, Warner Chilcott's Ovcon supply needs would immediately be drastically reduced.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 29 of the Complaint, except admits that Warner Chilcott and Barr entered into a supply agreement, and further admits that Barr could not supply Warner Chilcott with Ovcon prior to receiving FDA approval.  Warner Chilcott respectfully refers the Court to the supply agreement for the terms thereof.

**PLAINTIFF'S ALLEGATION**

30.     On April 22, 2004, the FDA approved Barr's ANDA to produce and market generic Ovcon.  On April 23, 2004, Barr publicly announced its intention to market generic Ovcon if Warner Chilcott chose not to exercise its exclusive license option.  However, on May 6, 2004, Warner Chilcott exercised the exclusive license option under the Final Agreement by paying Barr $19 million.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 30 of the Complaint.  Warner Chilcott denies the allegations contained in the second sentence of Paragraph 30 of the Complaint, except admits that Barr publicly contemplated marketing a generic version of Ovcon if Warner Chilcott did not exercise its option, subject to certain risks and uncertainties associated with making generic Ovcon commercially available.  Warner Chilcott denies the allegations contained in the third sentence of Paragraph 30 of the Complaint, except admits that on May 6, 2004, Warner Chilcott exercised the option, and further admits that Warner Chilcott paid Barr $19 million upon exercise of the option.  Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

15

**PLAINTIFF'S ALLEGATION**

31.    Warner Chilcott did not begin purchasing Ovcon supply from Barr at that time, but instead continued to purchase Ovcon supply solely from Bristol-Myers Squibb Co., until about May 2005.  Under the terms of the Final Agreement, Barr cannot sell generic Ovcon in the United States for five years, or until approximately May 2009.  Absent its agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon shortly after receiving final FDA approval in April 2004.

**ANSWER**

Warner Chilcott denies the allegations contained in the first sentence of Paragraph 31 of the Complaint, except admits that product under Barr's ANDA could not be sold immediately upon FDA approval, and further admits that Warner Chilcott purchased Ovcon from BMS.  Warner Chilcott denies each and every allegation contained in the second sentence of Paragraph 31 of the Complaint.  Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 31 of the Complaint, except denies that Barr had the capability to market a generic Ovcon shortly after receiving final FDA approval.

**PLAINTIFF'S ALLEGATION**

32.    Entry of Barr's generic Ovcon into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon, and led to a significant reduction in the average price purchasers paid for Ovcon products.  Barr has abided by its agreement not to sell generic Ovcon in the United States.  As of the date of this complaint, Barr remains the only company that has received approval from the FDA to make an AB-rated generic version of Ovcon.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint, except denies that entry

16

of a Barr generic Ovcon would have led to a significant reduction in the average price purchasers paid for Ovcon products.

**PLAINTIFF'S ALLEGATION**

33.     The relevant product market is the market for the sale of Ovcon and its AB rated generic equivalents.

**ANSWER**

Paragraph 33 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 33 of the Complaint.

**PLAINTIFF'S ALLEGATION**

34.     The relevant geographic market is the United States as a whole.

**ANSWER**

Paragraph 34 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 34 of the Complaint.

**PLAINTIFF'S ALLEGATION**

35.     At all relevant times, Warner Chilcott's market share in the relevant product and geographic markets was 100%.

**ANSWER**

Paragraph 35 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every the allegation contained in Paragraph 35 of the Complaint.

**PLAINTIFF'S ALLEGATION**

36.    *Numerosity:*  Joinder of all Class members is impracticable.  While the size of the Class is not yet known with certainty, based on the nature of the trade and commerce involved, Plaintiff reasonably believes that the Class numbers potentially in the hundreds, if not thousands. Class members are geographically dispersed throughout the United States.  The Class members are readily identifiable from information and records in Warner Chilcott's exclusive possession.

**ANSWER**

Paragraph 36 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 36 of the Complaint.

**PLAINTIFF'S ALLEGATION**

37.    *Commonality:*  Questions of law and fact are common to the Class, including, but not limited to:

a.    whether the agreement not to compete among Defendants is a *per se* violation of the Sherman Act;

b.    whether Defendants engaged in agreements, contracts, combinations, and conspiracies, which had the purpose and/or effect of unreasonably restraining competition and limiting purchaser access to generic Ovcon;

c.    whether Defendants' unreasonably anti-competitive contracts, combinations, and conspiracies have caused Plaintiff and the other members of the Class to suffer antitrust injury in the nature of overcharges;

18

    d.      whether Defendants' unlawful conduct caused Plaintiff and other Class members to pay more for Ovcon than they otherwise would have paid;

    e.      the appropriate Class-wide measure of damages; and

    f.      whether Defendants' anti-competitive conduct is continuing, thus entitling the Class to injunctive relief to promote unrestrained trade and free and fair competition.

## ANSWER

Paragraph 37 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 37 of the Complaint.

## PLAINTIFF'S ALLEGATION

38.    ***Typicality:***  Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and other Class members are direct purchasers of Ovcon and were overcharged and thus injured by the same wrongful conduct of Defendants. Defendants' violation of the antitrust laws, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiff and the other Class members.

## ANSWER

Paragraph 38 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 38 of the Complaint. Warner Chilcott denies each and every remaining allegation in Paragraph 38 of the Complaint. Warner Chilcott further denies that it engaged in any unlawful or wrongful conduct whatsoever.

**PLAINTIFF'S ALLEGATION**

39. ***Adequacy:*** As representative of the Class, Plaintiff will fairly and adequately protect the interests of all Class members.

**ANSWER**

Paragraph 39 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 39 of the Complaint.

**PLAINTIFF'S ALLEGATION**

40. ***Predominance:*** The questions of law and fact that are common to the members of the Class predominate over any questions affecting only individual Class members. Whatever possible difficulties may exist in the management of the class action are greatly outweighed by the advantages of the class action procedure. Those advantages include, but are not limited to, providing Class members with a method for redress of claims that might otherwise not warrant individual litigation.

**ANSWER**

Paragraph 40 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 40

of the Complaint.


## PLAINTIFF'S ALLEGATION

41.    *Superiority:*  Class action treatment is a superior method for the fair and efficient
adjudication of the controversy, in that, among other things, such treatment will permit a large
number of similarly situated persons to prosecute their common claims in a single forum
simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and
expense that numerous individual actions would engender.  A class action enables injured
persons or entities to obtain redress on claims that might not be practicable to pursue
individually.  Class treatment also eliminates the potential for inconsistent adjudications.

## ANSWER

Paragraph 41 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 41 of the Complaint.  Warner Chilcott further denies that class action

treatment is superior to other available methods for the fair and efficient adjudication of this

controversy, and further denies that a class action is the proper vehicle for this action.


## PLAINTIFF'S ALLEGATION

42.    Plaintiff incorporates by reference all of the foregoing allegations as though fully
set forth herein.

## ANSWER

Warner Chilcott incorporates and realleges by this reference each and all of the

matters set forth in its Answers to Paragraphs 1 through 41 of the Complaint as if fully set forth

herein.

**PLAINTIFF'S ALLEGATION**

43.    Section 1 of the Sherman Act prohibits every unreasonable contract, combination or conspiracy in restraint of trade. 15 U.S.C. § 1.

**ANSWER**

Paragraph 43 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 43 of the Complaint.

**PLAINTIFF'S ALLEGATION**

44.    Prior to, and during, the Class Period, Defendants agreed, conspired and colluded to allocate the market for Ovcon by eliminating generic competition for at least five years.  Such conduct constitutes an illegal agreement, combination and conspiracy in restraint of trade in violation of Section 1 of the Sherman Act. 15 U.S.C. § 1.

**ANSWER**

Paragraph 44 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 44 of the Complaint, and further denies that it has engaged in any illegal conduct whatsoever.

**PLAINTIFF'S ALLEGATION**

45.    As alleged above, there was no legitimate business justification for the agreement, collusion and conspiracy between Defendants that: (a) substantially foreclosed and excluded competition from generic competition for Ovcon; and (b) resulted in Warner Chilcott's willful maintenance and unlawful exercise of monopoly power in the relevant markets.

**ANSWER**

22

Paragraph 45 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 45 of the Complaint.

## PLAINTIFF'S ALLEGATION

46.    Defendants' collusion, agreement and conspiracy alleged herein has enabled and assisted Warner Chilcott in: (a) effectively excluding less expensive, competitive products from the relevant market; (b) maintaining Warner Chilcott's 100% market share and monopoly power in the relevant market; and (d) otherwise reaping the benefits of its illegal monopoly power. The anti-competitive effects of Defendants' collusive and conspiratorial conduct far outweighs any conceivable procompetitive benefits or justifications.

## ANSWER

Paragraph 46 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 46 of the Complaint.

## PLAINTIFF'S ALLEGATION

47.    Plaintiff and members of the Class were injured in their business or property by the agreement, collusion and conspiracy alleged above which facilitated, enabled, assisted or furthered Warner Chilcott's substantial foreclosure and exclusion of competition and monopolization of the relevant market. Without limiting the generality of the foregoing, Plaintiff and the other members of the Class have been forced to pay higher prices for Ovcon than they would have paid in the absence of Defendants' unlawful conduct.

## ANSWER

Paragraph 47 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 47 of the Complaint.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs on behalf of itself and the Class, respectfully requests that:

(i)     The Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23, be given to the Class;

(ii)     The acts alleged herein be adjudged and decreed to be a *per se* violation of Section 1 of the Sherman Act;

(iii)     Each member of the Class recover threefold the damages determined to have been sustained by each of them, and that judgment be entered against Defendant in favor of the Class;

(iv)     The Class recover its costs of suit, including reasonable attorneys' fees and costs as provided by law; and

(v)     The Class be granted such other appropriate relief as may be determined to be just, equitable, and proper by this Court.

## ANSWER

WHEREFORE, Warner Chilcott denies that this suit can be litigated as class

action, denies that Plaintiff is entitled to any relief whatsoever and respectfully requests

judgment for Warner Chilcott along with costs and attorneys' fees, as may be allowed by law,

and such further relief as the Court deems appropriate.  Furthermore, Warner Chilcott denies

every allegation contained in the Complaint not specifically herein admitted.

## AFFIRMATIVE DEFENSES

Warner Chilcott states the following affirmative defenses without assuming the

burden of proof of such defenses that would otherwise rest on Plaintiff.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim against Warner Chilcott on which relief can

be granted.

25

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE
### (Justification)

Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.

## SIXTH AFFIRMATIVE DEFENSE
### (Preservation of Business)

Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.

## SEVENTH AFFIRMATIVE DEFENSE
**(No Injury to Competition)**

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's actions have injured competition in any relevant market.

## EIGHTH AFFIRMATIVE DEFENSE
**(Pro-Competitive Effects)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott's alleged actions have pro-competitive effects that benefit competition as a whole in any relevant market.  Warner Chilcott's alleged actions increased competition and are in furtherance of trade.

## NINTH AFFIRMATIVE DEFENSE
**(No Consumer Harm)**

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed consumers.

### TENTH AFFIRMATIVE DEFENSE
#### (No Harm to Plaintiff)

Plaintiff's claims are barred, in whole or in part, because none of Warner

Chilcott's alleged actions have harmed Plaintiff.

### ELEVENTH AFFIRMATIVE DEFENSE
#### (No Knowledge or Intent)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott had no

knowledge, intention or belief that its actions might illegally restrain trade.  Further, Warner

Chilcott could not have known that its actions might illegally restrain trade.

### TWELFTH AFFIRMATIVE DEFENSE
#### (No Willful, Flagrant or Unconscionable Act)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not

engage in any willful, flagrant or unconscionable act.

### THIRTEENTH AFFIRMATIVE DEFENSE
#### (Good Faith Reliance)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott relied in

good faith on the actions of the Federal Trade Commission.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (No Notice)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (No Concealment)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Failure to Identify Appropriate Markets)

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not properly alleged either a relevant product market or a relevant geographic market.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (No Market Power)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott has and had no market power.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Causation)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott's actions were not the proximate cause in fact of Plaintiff's alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent that Plaintiff has failed to mitigate, minimize or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Lawful Conduct)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott has acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with respect to Plaintiff.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Not Maintainable as a Class Action)

Plaintiff's claims are barred, in whole or in part, because the action against Warner Chilcott is not properly maintained as a class action.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
**(Lack of Antitrust Injury)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered antitrust injury.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
**(No Pattern or Practice)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not engage in any pattern or practice of illegal activity.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE
**(No Standing)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff does not have standing.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE
**(Failure to Plead a Proper Party)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to plead a proper party.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE
**(Reservation of Additional Defenses)**

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

## JURY DEMAND

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## WARNER CHILCOTT'S PRAYER FOR RELIEF

WHEREFORE, Warner Chilcott prays as follows:

1.    That the Court enter judgment for Warner Chilcott on all counts;

2.    That the Court award Warner Chilcott reasonable costs and

expenses including, but not limited to, attorneys' fees and costs of suit, and such other

and further relief as may be appropriate.

February 21, 2006                         Respectfully submitted,

                              By:    /s/
                                   _____
                                   Kevin J. Arquit, D.C. Bar #438511
                                   Charles E. Koob, *pro hac vice* pending
                                   SIMPSON THACHER & BARTLETT LLP
                                   425 Lexington Avenue
                                   New York, New York 10017
                                   (212) 455-2000

                                   *Counsel for Warner Chilcott Defendants*